WILLIAM HARDACRE, Admr. *v.* FRANK A. SAYLES.

MARCH 13, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, and Parkhurst, JJ.

(1) *Master and Servant.   Assumed Risks.*

Intestate was employed by defendant as a piper and was at work, assisted by a fellow workman, hanging a dripping-pan upon the main steampipe running from the boiler to the engine room. The pipe had been in use for over fifteen years and there was a heavy " T " joint at the place of the accident, which joint had leaked intermittently ever since its installation. The joint and thread where the pipe engaged the " T " had been " calked " repeatedly for years, so that a groove running entirely round the rim of the " T " was formed, and several of the outer threads had become entirely destroyed. The day before the accident the attention of both the master mechanic and mechanical engineer of defendant had been called to the joint, which they inspected, and some calking was done that afternoon by intestate.

After this examination defendant's engineer, who had full control of the matter, gave orders to take measurements for a new pipe to be installed. During the night before the accident pipers and calkers worked on the joint endeavoring to stop the leakage, which was excessive. Steam was shut off in the pipe about three o'clock A. M. the day of the accident.

It was in evidence that an employee who assisted about the calking between three and five o'clock A. M. saw evidence there had been a slipping of the joint where the pipe and " T " came together between the time when he first saw the joint, when the steam was at full pressure on the previous evening, and the time he went to work after the steam was shut off at three o'clock A. M., and that he called the attention of another employee to this, which was reported by the latter to another employee who had charge of the piping and repairs there as soon as he came in the following morning, about 6:25 A. M. Intestate came to work at 6:30 A. M., and went up on a ladder to hang a new dripping-pan on the pipe, within twenty minutes after the report was made, no warning being given him of the condition of the joint or that it was believed to have slipped. Within three minutes thereafter the pipe and " T " pulled apart and intestate was killed by the escaping steam. Intestate was an experienced steam fitter, and had frequently worked upon the joint and had knowledge of its leaking:—

*Held,* that intestate did not assume any risk as to conditions unknown to him at the time of the accident, but that the foreman took the risk in ignoring the information given him about the slipping of the pipe in the "T," which was negligence of the grossest character which must be imputed to the defendant as the master.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and exceptions overruled.

PARKHURST, J. This is an action of negligence for damages for death of plaintiff's intestate, James Allen, brought, under the statute, for the benefit of Elizabeth Allen, the widow, and William Allen and Isabella Allen, only surviving children of said deceased.

Plaintiff's intestate was employed by the defendant as a piper in Sayles Bleachery, and was at work, assisted by one Michael Mitchell, hanging a dripping-pan upon the main steam-pipe, which runs from the boiler room to the engine room of the bleachery, shortly before seven o'clock in the morning of Tuesday, December 8, 1903, when the accident happened, which resulted in the instant death of both men.

This large main was about fourteen inches in diameter, and had been in use for over fifteen years prior to the accident.

Its purpose was to carry the steam from the boilers to the engine, a distance of several hundred feet; also to the kiers where the goods were boiled in the bleaching process.

A heavy " T " joint was provided on this pipe at the place of the accident.

This joint had leaked intermittently ever since its installation, as shown by the testimony. The joint and threads therein where the pipe was engaged in the " T " had been " calked " repeatedly for years, so that a groove or slot, running entirely round the rim of the " T," was formed upon the side of the " T " next the engine room.

Copper wire had been used in this calking, and several of the outer threads had become entirely destroyed by the calking process.

Prior to the accident a winding or folding machine had been lately installed, directly under this joint, in the unoccupied space there, and the leakage and drippings from the joint damaged the cloth running through and over this winding machine.

In the afternoon of Monday, December 7, 1903, the day before the accident, the attention of both the master mechanic, Alexander Stewart, and the mechanical engineer, Kenneth F. Wood, had been called to this joint, and they then came there together and looked over the pipe and inspected this joint at

the " T;" and some calking was done during that afternoon, by Allen the plaintiff's intestate and by Mitchell.

The engineer, who had full charge and control of all the defendant's machinery, ways, and works, and the repair thereof, just after this examination and as the result thereof, gave orders to his master mechanic to take measures for a new pipe and then to take down this pipe and install a new pipe in place of it. These facts are undisputed in the testimony, though the parties are at variance as to the true reason and significance of this determination to take down and replace this offending joint and pipe.

During the night preceding the accident pipers and calkers in the "night-gang" labored with this joint, endeavoring to stop the leakage, now markedly excessive in degree. Steam was shut off in this main pipe, at their request, about three o'clock in the morning on the day of the accident.

One witness, Cooney, who assisted Brassell about the calking of the joint between three and five o'clock A. M. in the morning of December 8, the day of the accident, testified that he saw evidence that there had been a slipping of the joint where the pipe and the " T " came together, between the time when he first saw the joint, when the steam was still at full pressure, on the previous evening, and the time they went to work after the steam was shut off at three o'clock A. M., and that he called the attention of Brassell to this fact, and that this occurrence was reported by Brassell to one Rooney, who had charge of the piping and repairs there, as soon as he came in the following morning.

This report was made to Rooney about 6.25 A. M. and Allen and Mitchell, who came to work at 6.30, went up on ladders to hang a new dripping-pan thereon, within twenty minutes after the report was made.

No warning or notice of any kind was given to either of them by Rooney, or otherwise, of the condition of the joint, or of the fact that it was believed to have slipped.

Within three minutes after they went up to the joint the pipe and " T " pulled apart and exploded, and both were killed by the escaping steam.

Upon trial of this case in the Superior Court, before Mr. Justice Brown and a jury, a verdict was returned for the plaintiff for $10,500.

Thereafter the defendant duly filed his motion for a new trial, upon the usual grounds that the verdict was against the law and the evidence and because of excessive damages and newly discovered evidence; which motion was denied by the Superior Court, and no newly discovered evidence has been produced.

It is urged by the defendant, and nowhere denied, that Allen, the plaintiff's intestate, was an experienced steam fitter; that he had frequently worked upon this joint, and he had full knowledge of its leaking from time to time, and that he had as much notice as anyone could have had of the danger incident to the condition of the joint; and therefore that he assumed the risk of danger, and that no recovery can be had. This argument, however, fails to take into account the most important and vital element of the case, namely: that Rooney, who was the foreman over him, had notice of something which had not been brought to Allen's attention, regarding Cooney's statement about the slipping of the pipe in the " T." Whether that slipping did in fact occur or not, it was a matter of such importance, and, if true, so significant of radical and dangerous impairment of the holding power of the joint, as agreed by all the experts, that, in our opinion, Allen and Mitchell should not have been allowed to go upon the ladders in close proximity to the joint to hang the dripping-pan in place. On the contrary, in our opinion, the steam should have been shut off at once, until a complete investigation and test could have been made.

Rooney admits receiving this notice, but attempts to say that he made an examination of the joint after getting this report as to the slipping; but as it is undisputed that a " climax clamp " of brass with rubber packing had been placed about the joint by Brassell and Cooney after they finished calking, in such manner that the joint was completely covered by the clamp, so that no part of the joint could be seen, and there is no evidence that Rooney took this clamp off or could have taken it off in the time at his disposal, and no attempt by Rooney either

to deny that it was there or that it covered the joint as stated, it is impossible to believe that Rooney made any examination whatever of the joint other than to see how much it was leaking at the time.

(1) We are of the opinion, therefore, that the plaintiff's intestate did not assume any risk as to conditions unknown to him at the time of the accident; that Rooney took the risk in ignoring the information given him by Brassell, and that this was negligence of the grossest character which must be imputed to the defendant as the master.

Numerous exceptions have been taken by the defendant, both as to admission and exclusion of testimony, and as to the charge and refusals to charge. We have examined them all carefully, and find that no useful purpose can be served by discussing them *seriatim.* We find no error in any of them of such important character as in any way to have affected the verdict injuriously to the defendant.

The charge as given to the jury was an admirable and clear statement of the law of the case, and the court did not err in refusing the special requests, as in no particular would they have added to the clearness of the charge, and many of them would have been misleading.

We think the evidence is sufficient to support the verdict of the jury both as to liability and as to the amount of the verdict, which we do not find to be excessive.

The exceptions are overruled, and the case is remanded to the Superior Court with instructions to enter judgment upon the verdict.

*John W. Hogan,* for plaintiff.

*Edwards & Angell and Lewis A. Waterman,* for defendant.